| | |
|---|---|
| MOLLY KAZAY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FACE & BODY, LLC, )<br>)<br>Defendant. )<br>) | NO. 3:20-cv-01087<br>JUDGE RICHARDSON |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's motion for summary judgment (Doc. No. 34, "Motion") and accompanying memorandum in support (Doc. No. 35). Plaintiff filed a response (Doc. No. 39), and Defendant filed a reply (Doc. No. 40). For the reasons stated herein, Defendant's Motion will be granted. However, as explained below, Plaintiff's negligent hiring claim remains pending.

### BACKGROUND[1]

At all relevant times, Plaintiff was an employee of Defendant. (Doc. No. 39-2 at 4). Plaintiff contends that Atef Halaka was her supervisor, though Defendant disputes this. (*Id.* at 6). On August

---

[1] The facts (whether disputed or undisputed) in this section are all taken from Plaintiff's response to Defendant's statement of undisputed facts (Doc. No. 39-2). These facts are undisputed (and thus stated without qualification) unless otherwise indicated (by being subjected to some sort of qualification, such as "Plaintiff contends that"). More specifically, to the extent that Plaintiff's response to Defendant's statement of undisputed facts (Doc. No. 39-2) indicates that a fact is undisputed, it is stated here without qualification; and to the extent that Plaintiff's response to Defendant's statement of undisputed facts indicates that a fact is disputed, it is stated here with some qualification. The Court notes that it provides these facts to put into context the facts (or, in some cases, alleged facts) related to the claims asserted in Plaintiff's complaint. However, as demonstrated by the Court's analysis, the resolution of the instant Motion (unlike most summary judgment motions) turns not on what the facts are (or to be more precise, what facts are undisputed versus genuinely disputed), but rather on what *claims were asserted* by Plaintiff in the complaint and what *arguments were made* by Plaintiff in her response to the Motion.

3, 2019, via Facebook Messenger, Halaka sent Plaintiff a message that stated "Hey Molly, I am so disparate [sic] for an [sic] advice from a female friend. Would you consider having dinner with me?" (*Id.* at 7). Plaintiff did not respond to this message, allegedly because it made her uncomfortable. (*Id.*). Halaka then sent a second message which stated "Hi Molly, I am so sorry, I just realized that I may have crossed a line here between employees so please forgive me and no need to answer my request. See you tomorrow at work. . . ." (*Id.*). Plaintiff responded "Just seeing this—I hope everything works out. No worries. See you tomorrow!" (*Id.* at 7–8). The following day at work. Halaka asked to speak to Plaintiff outside. (*Id.* at 8). Halaka apologized for the message and said that the "offer still stands" (referring to his dinner invitation). (*Id.* at 8–9).

In late August, there was a serious mix up with a shipping order, which Plaintiff later referred to in her deposition as a "fiasco." (*Id.* at 17–18). Plaintiff was terminated that same day. (*Id.* at 19).

On December 20, 2020, Plaintiff filed a complaint that contained three claims against Defendant:

- Claim I: Discrimination & Retaliation in violation of Title VII
- Claim II: Discrimination & Retaliation in violation of the Tennessee Human Rights Act (Tenn. Code Ann. § 4-21-101).
- Claim III: Negligent hiring

(Doc. No. 1). Although Defendant purports in its Motion to requests summary judgment on all claims, Defendant's supporting memorandum addresses only Claims I and II. Therefore, the Court construes Defendant's summary judgment motion as actually requesting summary judgment on Claims I and II only.

LEGAL STANDARD

The Court below sets forth applicable summary judgment standards, albeit with the realization that (as discussed below) resort to such standards actually is not required in this

particular case because resolution of the Motion turns only on what arguments the respective parties did not make.

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) if its proof or disproof might affect the outcome of the suit under the governing substantive law. *Id*. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc*., 901 F.3d 619, 627-28 (6th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Alternatively, the moving party may meet its initial burden by otherwise "show[ing]"—even without citing materials of record—that the nonmovant "cannot produce admissible evidence to support a material fact (for example, the existence of an element of a nonmovant plaintiff's claim)." Fed R. Civ. P. 56(c)(1)(B). If the summary judgment movant meets its initial burden, then in response the non-moving party must set forth specific facts showing

that there is a genuine issue for trial. *Pittman*, 901 F.3d at 628.[2] Importantly, "[s]ummary judgment for a defendant [that has met its initial burden as the movant] is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial.'" *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06 (1999) (quoting *Celotex,* 477 U.S. at 322).

Any party asserting that a fact cannot be or genuinely is disputed—i.e., any party seeking summary judgment and any party opposing summary judgment, respectively—can support the assertion either by: (a) citing to materials in the record, including, but not limited to, depositions, documents, affidavits, or declarations, Fed. R. Civ. P. 56(c)(1)(A), or (b) "showing" (i) that the adverse party cannot produce admissible evidence to raise a genuine dispute as to that fact or (ii) that contrary to the claim of the adverse party, the materials cited by the adverse party do not actually establish the absence or presence (as the case may be) of a genuine dispute as to that fact.

In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary

---

[2] Courts (appropriately) at times refer interchangeably to a party being able to raise a genuine issue as to fact and a reasonable jury being able to find in the party's favor on that fact, and this Court does likewise.

judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

DISCUSSION

As it currently stands upon completion of briefing by both sides, the Motion is in a somewhat strange procedural posture. As noted above, the complaint contains three claims: Discrimination and Retaliation under Title VII (Count I); Discrimination and Retaliation under the Tennessee Human Rights Act ("THRA") (which in most respects are analyzed the same way as the Title VII claim) (Count II); and Negligent Hiring (Count III).

The complaint explicitly alleges that Plaintiff was subjected to a hostile work environment. (Doc. No. 1 at 8, 9). Though the words "hostile work environment" do not appear in Title VII, it is widely recognized that Title VII claims can be supported on the theory that a plaintiff experienced a hostile work environment (as that concept is properly understood). *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 743 (1998). In its memorandum in support of its Motion, Defendant appropriately addressed Plaintiff's Title VII hostile-work-environment claim.[3] (Doc. No. 35 at 8). Defendant also addressed Plaintiff's claim of retaliation under Title VII. (*Id.* at 16).

In her response, Plaintiff did not respond either to (i) Defendant's argument as to why it is entitled to summary judgment on Plaintiff's Title VII hostile-work-environment claim, or (ii) Defendant's argument as to why it is entitled to summary judgment on Plaintiff's Title VII retaliation claim. As such, Plaintiff has abandoned these claims, and Defendant is entitled to summary judgment on them. *See Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2012) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to

---

[3] Plaintiff's Tennessee Human Rights Act ("THRA") claims are analyzed under Title VII standards. *See Armstrong v. Tennessee Education Lottery Corp.*, 219 F. Supp. 3d 708, 714 at n.1 (M.D. Tenn. 2016). Therefore, the Court's analysis as to Plaintiff's Title VII claims is dispositive as to her THRA claims.

have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment").

Perhaps Plaintiff abandoned her claim of hostile work environment because she believed that she could not avoid summary judgment on such claim. But in any event, having abandoned such claim, Plaintiff attempts to persuade the Court that her Title VII discrimination claim is in fact based on a *quid pro quo* theory (as opposed to hostile work environment). (Doc. No. 39 at 11) ("Plaintiff's Title VII claim in this case is for *quid pro quo* sexual harassment"). But it is settled law that "a plaintiff may not expand h[er] claims to assert new legal theories for the first time in response to a summary judgment motion." *Desporis v. Perrysburg Exempted Village School Dist.*, 455 F. App'x 659, 665–666 (6th Cir. 2012). Indeed, a plaintiff must sufficiently raise claims and legal theories in the complaint in order to provide a defendant "notice that it would have to defend" against that theory or claim. *Alomari v. Ohio Dept. of Public Safety*, 626 F. App'x 558, 665 (6th Cir. 2015). "The nature of the notice requirement is more demanding at the summary judgment stage than at earlier stages of the litigation, because by this point a plaintiff has had the opportunity to conduct discovery and to amend the complaint to reflect new theories." *See id.*

The Court acknowledges, however, that there are "no magic words in the complaint [that] are necessary to state a claim—courts must instead examine the substance of a plaintiff's allegations." *Alomari,*, 626 F. App'x at 565. The complaint, however, neither explicitly nor in substance raises a *quid pro quo* theory as the basis of Plaintiff's discrimination claim so as to put Defendant on notice that Plaintiff intends to pursue this theory. As the Supreme Court explained in *Burlington Industries*, "*quid pro quo* cases" are "based on carried-out threats." *See Burlington Industries*, 524 U.S. at 742–743. "To prevail under a quid pro quo theory, a plaintiff must assert and prove":

> 1) that the employee was a member of a protected class; 2) that the employee was subjected to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors; 3) that the harassment complained of was based on sex; 4) that the employee's submission to the unwelcomed advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment; and 5) the existence of respondeat superior liability.

*Kauffman v. Allied Signal, Inc., Autolite Div.*, 970 F.2d 178, 186 (6th Cir. 1992). The complaint alleges that Plaintiff's supervisor, Atef Halaka, sent her a message on Facebook Messenger asking her to go to dinner because he needed advice about his relationships with other women. (Doc. No. 1 at 4). The complaint contends that Plaintiff did not respond to the message, and then Halaka sent a second message saying that he had "crossed the line" and asked her to forgive him. (*Id.*). Plaintiff then allegedly responded saying "no worries. See you tomorrow!" (*Id.*). The complaint further purports that the next day at work, Halaka spoke to Plaintiff and told her that "the offer still stands," referring to his dinner invitation. (*Id.* at 5). Sometime later, Plaintiff was supposedly terminated following a mix up regarding shipping orders. (*Id.* at 7–8). Plaintiff later in her deposition described the mix up as a "fiasco." (Doc. No. 39-2 at 17–18).

Without any explicit reference to a *quid pro quo*, the complaint repeatedly alleges that "Defendant FACE & BODY subjected Plaintiff MOLLY KAZAY to a sexually hostile work environment." (Doc. No. 1 at 11, 8, 9). The complaint therefore did not specifically put Defendant on notice that Plaintiff intended to pursue a *quid pro quo* theory of liability. To the contrary, the complaint explicitly indicated that Plaintiff intended to pursue a hostile-work-environment claim.

Although conceivably the complaint could have raised a *quid pro* quo theory implicitly, that did not actually happen. That is, the factual matter alleged in the complaint does not sufficiently raise the issue of a *quid pro quo*. Although Plaintiff alleges that Halaka's message was a form of sexual harassment, the facts do not suggest that Halaka's request for Plaintiff to join him

for dinner "was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment." *Kauffman*, 970 F.2d at 186. As the Sixth Circuit has explained, "*[q]uid pro quo* sexual harassment is anchored in an employer's sexually discriminatory behavior which compels an employee to elect between acceding to sexual demands and forfeiting job benefits, continued employment or promotion, or otherwise suffering tangible job detriments." *See Highlander v. K.F.C. Nat. Management Co.*, 805 F.2d 644, 648 (6th Cir. 1986). Though the Court appreciates that the complaint seeks to suggest that Plaintiff's refusal to go to dinner with Halaka resulted in her termination, the facts, either taken individually or viewed as a whole, do not suggest that Halaka's invitation created an implied condition of job benefits or that a refusal would result in a job detriment.[4] This conclusion is bolstered by the complaint's repeated references to a hostile work environment and lack of any explicit reference to a *quid pro quo*. Simply put, the alleged facts did not put Defendant on notice that Plaintiff's Title VII discrimination claim was premised on a *quid pro quo* theory.

Being unable to defeat summary judgment on a hostile-work-environment claim, Plaintiff is not permitted to conjure up an unpleaded *quid-pro-quo* theory at the eleventh hour in order to avoid summary judgment in Defendant's favor. Plaintiff had the opportunity to amend her complaint to incorporate new claims or legal theories following discovery but did not do so. The Court therefore need not grant summary judgment on a discrimination claim based on a *quid-pro-quo* theory, seeing as such a theory was not adequately raised in the complaint and cannot now be

---

[4] It is one thing to make accepting a dinner invitation a condition for the invitee to obtain (or retain) job benefits or avoid job detriments. It is quite another thing (albeit a likewise offensive and potentially illegal thing) to impose a job detriment (such as job termination) out of spite, anger, etc. after the fact, once the dinner invitation is refused.

raised at the summary judgment stage. In other words, because the complaint did not raise this theory, no such theory exists on which the court could grant summary judgment in the first place.

That leaves Plaintiff's negligent-hiring claim. Defendant strangely fails to address Plaintiff's negligent hiring claim in its Motion or supporting memorandum, despite ostensibly seeking summary judgment on all of Plaintiff's claims. As noted above, because Defendant failed to provide any argument on (or even acknowledge the existence) of Plaintiff's negligent hiring claim in its Motion or memorandum in support, the Court construes the Motion as requesting summary judgment only on Plaintiff's Title VII and THRA claims. Additionally, the Court declines to raise *sua sponte* the possibility of summary judgment on Plaintiff's negligent-hiring claim. Therefore, Plaintiff's negligent hiring claim remains pending.

In summary, Defendant is entitled to summary judgment on Plaintiff's Title VII and THRA claims of discrimination based on a hostile work environment and retaliation claims because Plaintiff abandoned those claims by failing to respond to Defendant's arguments in the Motion. The Court further declines to permit Plaintiff to now contend that her Title VII and THRA claims are not based on a hostile-work-environment theory but are instead based on a *quid-pro-quo* theory. Finally, Plaintiff's negligent hiring claim remains pending because Defendant did not move for summary judgment as to this claim (and the Court declines to rule *sua sponte* on whether summary judgment on this claim is warranted).

## CONCLUSION

For the reasons stated herein, Defendant's motion for summary judgment at Doc. No. 34 is GRANTED in full. As noted, Plaintiff's negligent hiring claim remains pending.

IT IS SO ORDERED.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE